Argued and submitted December 18, 1992, reversed and remanded in part; otherwise affirmed June 22, 1994

Deborah Karen MAINS,
*Appellant,*

*v.*

II MORROW, INC.,
*Respondent,*
*and*

Tim BERRY,
*Defendant.*

(90C-12044; CA A73240)

877 P2d 88

J. Michael Alexander argued the cause for appellant. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann.

Scott J. Fortmann argued the cause for respondent. With him on the brief were Richard F. Liebman and Lane, Powell, Spears, Lubersky.

Before Richardson, Chief Judge, and Deits, Judge, and Durham, Judge pro tempore.

DURHAM, J. pro tempore

## DURHAM, J. pro tempore

Plaintiff appeals from summary judgment for defendant II Morrow Corporation[1] on plaintiff's claims for employment discrimination on the basis of sex, disability and filing a workers' compensation claim, for intentional infliction of emotional distress and for wrongful discharge. We reverse as to the claims for sex discrimination and for intentional infliction of emotional distress, and otherwise affirm.

We view the record in the light most favorable to plaintiff, drawing all reasonable inferences in plaintiff's favor, to determine whether defendant established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). A factfinder could infer from the record that plaintiff's supervisor, Berry, harassed her at work because of her gender and created an environment in which he and other employees sexually harassed plaintiff on a daily basis. Berry was defendant's shop supervisor. Although he routinely allowed the male employees to select their job assignments, he rarely gave plaintiff a choice. Berry repeatedly made sexual comments and jokes, referred to plaintiff as a "sex-atary" and told her that she was "just another worthless woman." Plaintiff testified at her deposition:

> "I can't give you a certain day that this was, because it was on a daily thing. It was a general — general atmosphere of the shop. Okay. Number 1, Tim Berry was the one who used the comment 'lick my balls' the most often. He would say things to the other guys in the shop like, 'I bet you wish you were a dog so you could lick your own balls.'"

Plaintiff also testified:

> "[Berry] called me a snippy bitch one day, and I told him then, 'You shouldn't have said that, [Berry].' And throughout my employment, I was called a wench by almost every one of the guys. When I would walk in there, 'Oh, there's the wench.' And I hated it, but Tim encouraged it. * * * [O]ne time [Berry] was giving me a really hard time, and I said what

---

[1] We refer to II Morrow Corporation as defendant in this opinion. Defendant Berry is not a party to this appeal. The trial court granted summary judgment for defendant on all claims, and entered a judgment for defendant pursuant to ORCP 67B.

— 'Why are you treating me like that?' And he goes, 'Because I hate rich bitches.' "

On another occasion, Berry told plaintiff, "You must be catching AIDS from your boyfriend or something, you're so sickly all the time." On several occasions, Berry emerged from the bathroom, and said "I was just taking a Karen [plaintiff's first name]." When a male co-worker apologized for swearing in front of plaintiff, Berry told him "You can use that word around her any time you want. She's not a lady. My wife's a lady." On one occasion, a co-worker touched plaintiff's breast in a harassing manner. When she reported that incident to Berry, he trivialized it and took no action. Plaintiff testified that Berry said

> "something to the effect that, 'Maybe he's getting courageous now that he's quitting soon' or something like that. But I don't know of him taking [the co-worker] into his office and talking to him about that * * *."

Berry physically harassed plaintiff as well. He shoved her and grabbed her ankles. He stood in front of plaintiff's car to delay her departure at lunchtime and encouraged two other employees to do the same thing. He did not treat male employees in that manner.

Although plaintiff repeatedly protested these actions to Berry, the harassment continued. He explained that, if he did not harass her, "the guys would get really mad" at him. When plaintiff suggested that she might report his conduct to defendant's personnel supervisor, Berry warned that

> "that would be the wrong thing to do. [The personnel supervisor] doesn't have that much clout. And besides, if you do that, that will be a reason to fire you."

A factfinder could infer that defendant was aware of Berry's conduct and failed to correct it. Following an earlier sexual harassment complaint, the Bureau of Labor and Industries investigated and required defendant to place a warning letter in Berry's file. However, he retained his supervisory position. Moreover, plaintiff testified:

> "[W]hen I first started working there, all the women came up to me * * * and said, 'How can you work for [Berry]? He's terrible. He's horrible. He hates women. He puts them down

like crazy. He's a male chauvinist pig.' * * * From my first day there, I heard about his reputation."

Ultimately, plaintiff reported Berry's behavior to defendant's personnel supervisor, who placed plaintiff on paid leave. Following an investigation, defendant terminated Berry and asked plaintiff to return to work. Defendant offered to "attempt to find other suitable and available employment" if plaintiff did not want to return to her former position. Plaintiff refused to return and filed this action.

The trial court granted defendant's motion for summary judgment on plaintiff's claims for intentional infliction of emotional distress, sex discrimination and wrongful discharge, because plaintiff did not "demonstrate the responsibility of Defendant II Morrow." The court also held that plaintiff's claims for employment discrimination stemming from the workers' compensation claim were barred by the statute of limitations.

 We first address plaintiff's claim that the court erred in dismissing her wrongful discharge claim. Defendant argues that plaintiff cannot sustain her claim of wrongful discharge, because she quit after defendant terminated Berry. Plaintiff asserts that she was constructively discharged. An employer is liable for a constructive discharge if an employee resigns because of intolerable working conditions that a supervisor creates with the intent to force the employee to resign, and the employer is responsible for the conditions under the doctrine of *respondeat superior. Carlson v. Crater Lake Lumber Co.*, 105 Or App 314, 316, 804 P2d 511 (1991); *see also Bratcher v. Sky Chefs, Inc.*, 308 Or 501, 505, 783 P2d 4 (1989); *Sheets v. Knight*, 308 Or 220, 227, 779 P2d 1000 (1989).

Plaintiff argues that the intolerable working conditions remained, despite Berry's termination. However, plaintiff never explained what those intolerable conditions were. When asked whether she had quit, plaintiff testified:

"I said 'I can't come back under these terms, and I can't come back anyway because of [Berry's] termination.' And so I don't know if you consider that I quit or that I was terminated or what."

Plaintiff did not explain, let alone put on evidence of, her reason for rejecting employer's repeated reinstatement offers. She did not suggest that the reinstatement offer was a pretext designed to cover up further discrimination, or would restore her to a work environment that no reasonable employee would tolerate. She did not identify other employees who, despite Berry's firing, predictably would continue to harass her because of her gender, because of hostility for her role in the events that led to Berry's discharge, or for any other reason. Because her reluctance to return to work was not based on conditions that would support an inference of a constructive discharge, the trial court did not err in dismissing the wrongful discharge claim.

Plaintiff also assigns error to the court's conclusion that her claim for harassment for filing a workers' compensation claim is barred by the statute of limitations. The statute of limitations for that claim is one year. ORS 659.121(3). Plaintiff filed her complaint on October 19, 1990. She argues that the discriminatory conduct was her constructive discharge in May 1990. We have concluded that plaintiff has not offered evidence of a constructive discharge. She alleged no other conduct that occurred after January 1989, in support of her claim. The court correctly granted summary judgment on this claim.

■ ■ Plaintiff assigns error to the dismissal of her tort claim for intentional infliction of emotional distress. To support this claim, plaintiff must show that defendant intended to inflict severe mental or emotional distress on her, that defendant caused her severe distress, and that defendant's conduct was an "extraordinary transgression of the bounds of socially tolerable conduct" or exceeded "any reasonable limit of social toleration." *Patton v. J. C. Penney Co.*, 301 Or 117, 122, 719 P2d 854 (1986). Plaintiff's evidence shows that Berry repeatedly harassed and demeaned her because of her gender, that he harassed her both verbally and physically, and that his actions caused plaintiff to suffer severe emotional distress. A jury could conclude that this conduct extraordinarily transgressed "the bounds of socially tolerable conduct" or "exceeded any reasonable limit of social toleration." Moreover, from the extent of his harassment, a jury could infer that Berry intended to cause plaintiff severe

emotional distress. *See Palmer v. Bi-Mart Company*, 92 Or App 470, 758 P2d 888 (1988). Because plaintiff's evidence raised factual questions about whether Berry's conduct was tortious, the remaining question is whether defendant is responsible for that conduct.

Defendant contends that, as a matter of law, it is not responsible for Berry's conduct. We separately discuss defendant's responsibility under plaintiff's tort theory and her statutory sex discrimination theory, because the standards for employer responsibility are not identical.

██ ██ An employer is liable for an employee's tortious conduct if the employee acted within the "scope of employment." *Carlson v. Crater Lake Lumber Co., supra*, 105 Or App at 316. To make that determination, we apply a three-part test:

> "(1) [W]hether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988).

Vicarious liability is imposed, regardless of whether the employer committed a morally wrongful act, as a policy of risk allocation. *Farris v. U.S. Fidelity & Guaranty*, 273 Or 628, 636, 542 P2d 1031 (1975).

The first element of the *Chesterman* test is satisfied, because defendant acknowledges that Berry's conduct occurred at work. Defendant argues that Berry was not motivated to serve defendant when he sexually harassed plaintiff and was not hired to engage in that behavior. Defendant defines the issue under the three-part scope of employment analysis too narrowly. The *Restatement (Second) Agency*, § 229(1) (1958) describes the type of conduct that is relevant to the three-part test:

> "To be within the scope of employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."

The *Restatement* also provides:

> "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment." *Restatement, supra,* at § 230.

In *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 60, 757 P2d 1347 (1988), the Supreme Court quoted, with approval, section 245 of the *Restatement,* which provides:

> "A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant." *Restatement, supra,* at § 245.

As the Ninth Circuit recently explained, in a diversity case involving Oregon law,

> "the specific egregious act giving rise to an intentional tort claim will itself rarely be 'of a kind which the employee was hired to perform;' the appropriate inquiry is whether the employee committed the tort while performing, or in connection with, his job responsibilities." *Dias v. Sky Chefs, Inc.,* 919 F2d 1370, 1375 (9th Cir 1990), *vacated on other grounds* 501 US 1201, 111 S Ct 2791, 115 L Ed 2d 965 (1991), *affirmed on remand* 948 F2d 532 (9th Cir 1991), *cert denied* ___ US ___, 112 S Ct 1294, 117 L Ed 2d 517 (1992).

In *Carlson v. Crater Lake Lumber Co., supra,* the plaintiff claimed wrongful discharge, alleging that her supervisor harassed her in retaliation for resisting his sexual harassment. 105 Or App at 316. Noting that the question of scope of employment is generally one of fact, we concluded that a jury should be allowed to consider whether the supervisor's alleged harassment fell within the scope of his employment.

Defendant argues that this case is controlled by *G.L. v. Kaiser Foundation Hospitals, Inc., supra,* and *Carr v. U.S. West Direct Co.,* 98 Or App 30, 36, 779 P2d 154, *rev den* 308 Or 608 (1989), which held that the employees' acts of sexual assault could not reasonably be considered acts carried out for the benefit of the employer. Those cases are distinguishable, because they involved no allegation that the employer's agent acted with the intention of furthering the employer's business purposes.

■ In contrast, in this case, a factfinder could infer from the record that sexual harassment was a characteristic of Berry's method of supervising and controlling female subordinate employees in the workplace, and that defendant condoned this supervisory technique. Berry created a pervasive atmosphere of sexual harassment, was the subject of an earlier sexual harassment claim that the Bureau of Labor and Industries investigated, and was notorious within the company for discriminating against women. Despite the earlier complaint and his reputation, defendant retained Berry in a supervisory role. Berry told plaintiff that he harassed her because the male employees that he supervised expected that behavior. In a letter to the Employment Division after defendant fired him, Berry said that he "was discharged for something that my superiors condoned by participating in the same sort of conduct."[2] The evidence is sufficient to create a factual question regarding the second and third parts of the test described in *Chesterman v. Barmon, supra.* The court erred in dismissing plaintiff's claim for intentional infliction of emotional distress.

■ Plaintiff's claim for statutory discrimination under ORS 659.030[3] requires us to decide when an employer is responsible for sexual harassment on the job by a co-worker who is a supervisor. Both parties suggest a standard other

[2] Plaintiff submitted this letter in her response to defendant's motion for summary judgment, and defendant made no objection to that submission in the trial court. In the absence of an objection, the court may consider hearsay evidence offered in support of or opposition to a summary judgment motion. *Knez Building Materials Co. v. Manikas*, 113 Or App 220, 222 n 2, 831 P2d 80 (1992).

[3] ORS 659.030(1) provides, in part:

"[I]t is an unlawful employment practice:

"(a) For an employer, because of an individual's * * * sex, * * * to refuse to hire or employ or to bar or discharge from employment such individual. * * *

"(b) For an employer, because of an individual's * * * sex, * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"* * * * *

"(f) For any employer * * * to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden by this section * * *."

Harassment that creates a hostile work environment can constitute unlawful discrimination. *See Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90, 689 P2d 1292 (1984); *Swanson v. Eagle Crest Partners, Ltd.*, 105 Or App 506, 508, 805 P2d 727, *rev den* 311 Or 433 (1991).

than the traditional "scope of employment" analysis. Plaintiff argues that we should adopt a form of absolute employer liability for harassment by a supervisor. Defendant urges us to adopt the standard followed by the federal courts in sex discrimination cases under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq*, on which ORS 659.030 is based.[4] *See Seitz v. Albina Human Resources Center*, 100 Or App 665, 673, 788 P2d 1004 (1990).

The text and context of the statute do not disclose the legislature's intent. *See PGE v. Bureau of Labor & Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The legislative history is unenlightening, and the question is not answered by Oregon case law.

Because Title VII was the basis for ORS 659.030, the federal cases are instructive. *See Goldsborough v. Eagle Crest Partners, Ltd.*, 105 Or App 499, 503, 805 P2d 723 (1991), *aff'd* 314 Or 336, 838 P2d 1069 (1992). The federal courts acknowledge that sexual harassment may take different forms. Those courts generally follow two methodologies in analyzing such cases.[5] In "quid pro quo" cases, the employer is liable if it links employment benefits to the acceptance or rejection of sexual favors. *Karibian v. Columbia University*, 14 F3d 773 (2d Cir 1994). The employer is strictly liable if the supervisor uses the employee's acceptance or rejection of sexual favors as a quid pro quo for job benefits. *Steele v. Offshore Shipbuilding, Inc.*, 867 F2d 1311, 1316 (11th Cir),

---

[4] 42 USC § 2000e-2 provides, in part:

"(a) **Employer practices**

"It shall be an unlawful employment practice for an employer —

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (Boldface in original.)

[5] As noted in *Ellison v. Brady*, 924 F2d 872, 875 n 4 (9th Cir 1991),

"Some courts have entertained causes of action for sexual harassment which do not fall squarely within the quid pro quo cases or the hostile environment cases. For example, some courts have classified harassment based on the victim's gender as sexual harassment where the conduct or language is not sexual in nature. *See, e.g., Hall v. Gus Construction Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988). Our examples are illustrative and not exclusive because we realize that sexual harassment is a rapidly expanding area of the law."

*reh'g denied* 874 F2d 821 (1989). Plaintiff does not show that her claim constitutes quid pro quo sex discrimination.

The second methodology permits recovery for a sexually "hostile environment." *Meritor Savings Bank v. Vinson*, 477 US 57, 67, 106 S Ct 2399, 91 L Ed 2d 49 (1986), says:

> "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " (Quoting *Henson v. City of Dundee*, 682 F2d 897, 904 (11th Cir 1982).)

*See also Harris v. Forklift Systems, Inc.*, ＿＿ US ＿＿, 114 S Ct 367, 126 L Ed 2d 295 (1993). In applying this methodology, the Court has not adopted a precise standard for determining an employer's liability for a supervisor's conduct, but has applied only general agency principles. *Meritor Savings Bank v. Vinson, supra*, 477 US at 72. However, the lower federal courts have developed a somewhat clearer rule. In *Steele v. Offshore Shipbuilding, Inc., supra*, 867 F2d at 1316, the court held that when the plaintiff claims that a co-worker created a hostile environment through sexual harassment, the employer is liable if the employer "knew or should have known of the harassment and failed to take prompt remedial action against the supervisor." *See also E.E.O.C. v. Hacienda Hotel*, 881 F2d 1504, 1516 (9th Cir 1989); *Brooms v. Regal Tube Co.*, 881 F2d 412, 421 (7th Cir 1989). The Oregon Supreme Court quoted this federal standard, without comment, in *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 89, 689 P2d 1292 (1984). We follow that standard here.

■ Plaintiff's evidence, if credited, shows that Berry created a pervasive atmosphere of sexual harassment, that he was the subject of an earlier sexual harassment claim that the Bureau of Labor and Industries investigated, that he was notorious within the company and that defendant condoned the activity. There is a genuine issue of material fact as to whether management-level employees of defendant had reason to know of Berry's conduct and condoned it. There is also a genuine issue of material fact as to whether the corrective action that defendant took was sufficiently "prompt." Accordingly, we conclude that the court erred in dismissing plaintiff's claim that she suffered "hostile environment"

discrimination through Berry's actions, and that defendant is responsible for those actions.

Reversed and remanded on claims for intentional infliction of emotional distress and statutory sexual discrimination; otherwise affirmed.