**Karla McMELLON, Plaintiff,**

**v.**

**SAFEWAY STORES, INC., a Delaware corporation, Defendant.**

**Civil No. 95–1290–FR.**

United States District Court,
D. Oregon.

Nov. 13, 1996.

Richard C. Busse, Scott N. Hunt, Law Offices of Richard C. Busse, Portland, OR, for Plaintiff.

Lisa C. Brown, Hoffman, Hart & Wagner, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Karla McMellon, alleges claims for wrongful discharge, the intentional infliction of emotional distress, and the reckless infliction of emotional distress against her former employer, the defendant, Safeway Stores, Inc. (Safeway). Before the court is the motion of Safeway for summary judgment (# 23) against all of the claims of McMellon, and the motion of Safeway to strike (# 40).

### UNDISPUTED FACTS

Safeway employed Karla McMellon in 1984 in its store in Tillamook, Oregon. In 1991, she was assigned to the pharmacy department of the Safeway store. She worked in that department until her last day of work as a Safeway employee on or about June 15, 1994. At that time, McMellon was a pharmacy technician. David Walker, the manager of the pharmacy department of the Tillamook Safeway store, was McMellon's supervisor. Steve Gardner was the general manager of the Tillamook Safeway store. Jack Boehme, the director of pharmacy operations for Safeway, had his office away from the Tillamook Safeway store.

Prescription drugs are packaged by the manufacturers with the expiration date for the drug on the packaging. It is illegal for any pharmacy to dispense outdated drugs.

Although McMellon noticed that Walker was filling prescriptions with outdated drugs shortly after she transferred to the pharmacy in 1991, this practice did not trouble her until 1993 when the pharmaceutical knowledge that she had acquired led her to believe that the use of outdated drugs could be dangerous to purchasers of such drugs.

Pharmacies have a procedure for dealing with outdated drugs. The procedure provides that once the expiration date of a drug passes, the drug is removed from the shelf and put into a separate container in another part of the pharmacy. This procedure protects against the accidental use of outdated drugs. On occasion, unopened packages of outdated drugs are returned to the manufacturer for credit on Safeway's account. Opened packages of outdated drugs cannot be returned to the manufacturer for credit; therefore, they are destroyed.

McMellon has seen Walker dispense the following outdated drugs: morphine, Cardizem, acetaminophen with codeine, tetracycline, and Nystatin. McMellon, along with some of the other pharmacy employees, attempted to remove outdated drugs from the shelves of the pharmacy department on numerous occasions. Walker always thwarted McMellon's efforts, either by ordering her to reshelve the drugs or by reshelving the drugs himself. He told McMellon that he felt comfortable giving the outdated drugs to his family or taking them himself.

Walker was on vacation one week in March of 1994. While he was gone, McMellon and two other employees took more than $9,000 worth of outdated drugs from the pharmacy shelves and boxed them for shipment to the manufacturers. When Walker returned, he was angry. He would not talk to McMellon for a week. He then spoke to her privately, telling her that she did not have authority to take the outdated drugs from the pharmacy shelves and return them to the manufacturers. Walker told McMellon that he was going to reduce her work hours to remind her that he was the boss. Walker reduced McMellon's work hours from eight hours per day to six and one-half or seven hours per day. She followed this work schedule for

about a week. She then returned to an eight-hour a day work schedule.

McMellon complained to Gardner, the store manager, about her reduced work schedule. McMellon had also complained to Gardner about Walker's use of outdated drugs in December of 1993, April of 1994, and May of 1994. Gardner told McMellon that he would talk to Walker, and that she should not continue to worry about the situation. McMellon had also called Boehme, the director of pharmacy operations, in March and May of 1994 to report Walker's use of outdated drugs and to get information about how to properly dispose of outdated drugs.

On June 15, 1994, McMellon called Walker at the Safeway store to tell him that she was ill and could not come to work the next day. She reports her conversation with Walker as follows:

He said that Mr. Boehme talked to him about using outdates. Mr. Walker said he did not know what kind of wild hair I had by accusing him of using outdates. He said he did not know why I was out to get him but I was going to be sorry. He said he was going to get me for this. He said I could not prove he was using outdates. . . .

Plaintiff's Affidavit, p. 4, ¶ 7 (attached to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment). McMellon states that she was unable to return to work for Safeway after this telephone call.

On June 17, 1994, McMellon filed a workers' compensation claim for undue stress, whereupon Safeway placed her on a medical leave of absence. She then received workers' compensation benefits.

McMellon made a telephone report to the Oregon Board of Pharmacy on June 20, 1994. After an investigation, the Oregon Board of Pharmacy found Walker in violation of OAR 855–41–065(7) for intentionally dispensing prescription medications after the printed expiration date of the manufacturer.

McMellon testified that she had never quit her job at Safeway. On July 19, 1994, Safeway sent a letter to McMellon's attorney. The letter states, in part:

As I mentioned to you on the phone on July 8, 1994, we have made a management

change in the Pharmacy in our Tillamook store where Ms. McMellon works. As I understand Ms. McMellon's concerns from you and now from Dr. Turco's evaluation, it appears that by replacing our Pharmacy Manager [Walker], Ms. McMellon could now possibly return to work in her former position. At this time we would like to invite her to return to work and if there are any other concerns she has about the operations of that Department, she is encouraged to call me directly at 657–6359.

Exhibit B–1 to Affidavit of Patti A. Krieg in Support of Defendant's Motion for Summary Judgment. McMellon never responded to Safeway's letter of July 19, 1994. McMellon states that she did not respond because she did not want to return to work while the matter was still being investigated.

On April 13, 1995, Safeway sent the following letter to McMellon:

Our employment records show you have not worked since approximately 6/18/94. I am writing to you to determine whether or not you are interested in continuing your employment at Safeway.

Please let me know your intentions by completing the attached form and returning it to me in the provided envelope. If I do not receive the attached form back from you within 10 days of receipt of this letter I will assume that you are no longer interested in employment with Safeway and will faciliate [sic] the paperwork to that effect and instruct payroll to dispense any accurals [sic] you may have.

If you have any questions, please give me a call.

*Id.,* Exhibit B–3. McMellon never responded to this letter. She testified that her failure to respond did not mean that she did not want to come back to work for Safeway.

Safeway's employee record for McMellon lists her termination date as April 9, 1995. It is unclear why this date is earlier than the date of the last quoted letter.

### CONTENTIONS OF THE PARTIES

Safeway contends that (1) the wrongful discharge claim fails because (a) Safeway did not intentionally maintain unacceptable working conditions, (b) Safeway did not want McMellon to terminate her job with Safeway, (c) McMellon never did terminate her job with Safeway, and (d) O.R.S. 659.550 provides an adequate statutory remedy for a wrongful discharge claim; (2) the claim of McMellon for the intentional infliction of emotional distress fails because (a) there is no evidence of Safeway's intent to harm McMellon, and (b) the conduct of Safeway was not outrageous in the extreme; (3) the reckless infliction of emotional distress claim fails because the State of Oregon does not recognize this tort; and (4) McMellon's remedy is exclusively under the Oregon Workers' Compensation Act.

McMellon contends that (1) she had been constructively discharged when she abandoned her job; (2) on its face O.R.S. 659.550 does not bar common law tort claims; (3) the courts of the State of Oregon recognize both the reckless and the intentional infliction of emotional distress, and there is evidence to support both of these claims; and (4) the Oregon Workers' Compensation Act does not bar her claims because of the intentional conduct of Safeway.

### LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987).

### ANALYSIS AND RULING

1. *Motion to Strike*

Safeway moves to strike parts of McMellon's affidavit, parts of the statement of facts

in McMellon's memorandum in opposition to Safeway's motion for summary judgment, and parts of the statements made in McMellon's memorandum which Safeway argues are not supported by any evidence in the record. The court will deny the motion to strike. Rather than address each part of the record that Safeway moves against, the court will make general comments about the categories of information.

■ Safeway contends that some of the statements in McMellon's affidavit are inconsistent with the sworn testimony that McMellon has given and should be stricken as a sham generated to defeat Safeway's motion for summary judgment. Affidavits which are inconsistent with prior deposition testimony given by the affiant should be stricken if the court makes a factual determination that the contradictory matter is actually a "sham" and not the result of an honest discrepancy, a mistake, or the result of newly discovered evidence. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266–67 (9th Cir.1991).

■ Safeway contends that McMellon's statement in her concise statement of material facts that she "abandoned her employment" on June 15, 1994 is a sham in light of her deposition testimony and that she received workers' compensation benefits for a period of time after June 15, 1994. McMellon testified as follows: "Q. How did you communicate that you were quitting? A. I never quit." Exhibit A–1 to Affidavit of Lisa C. Brown in Support of Defendant's Motion for Summary Judgment, p. 19. The concise statement of material facts does not contradict McMellon's earlier deposition testimony. In her deposition, McMellon may be referring to the fact that she never formally resigned from her employment. Thus, the court denies the motion to strike.

Safeway moves to strike McMellon's statement in her affidavit that she received no support from management because the outdated drugs were not removed. Safeway points out that Walker was ultimately transferred from the pharmacy, and the outdated drugs were eventually removed. The court will rely on the underlying facts in its analysis below and will give these conclusory

statements only the weight that they deserve.

■ Safeway contends that McMellon's concise statement of material facts is not in the format required by the local rules and does not support all of the statement of facts in McMellon's memorandum in opposition to the motion of Safeway for summary judgment. The court reviews the evidentiary record and does not rely on summaries in the statement of facts. This also applies to the arguments of counsel in their memoranda.

■ Safeway contends that numerous statements in the affidavits of McMellon and Steve Schulte should be stricken as hearsay. The statements in McMellon's affidavit which are attributed to Boehme, Walker and Bates, another pharmacist at the Tillamook Safeway pharmacy, are not hearsay but are party-opponent admissions made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). Safeway has not submitted affidavits or deposition testimony to raise a factual issue as to whether the statements were made. The court concludes that these statements by Boehme, Walker and Bates are the statements of party-opponents and are admissible.

■ As long as the proffered evidence is "of a *kind* admissible at trial," evidence submitted on summary judgment need not be in a form that *would be* admissible at trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 & n. 2 (7th Cir.1994) (emphasis in original); *see Celotex Corp., supra,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Edward J. Brunet, Martin H. Redish, & Michael A. Reiter, *Summary Judgment* § 5.06, at 120 (1994), in which the authors state:

> As long as it is clear at the time the summary judgment motion is made that the evidence will be subsequently put into admissible form at trial, there would seem to be little to be gained by requiring the [party] to take the time and effort to restructure the evidence at the summary judgment stage.

■ The Investigation Report of the Oregon Board of Pharmacy, drafted by Schulte and attached to his affidavit, falls within the hearsay exception for records of regularly conducted activity, commonly called business records. Fed.R.Evid. 803(6). Accordingly, it will not be stricken.

In McMellon's affidavit, she refers to a friend who complained to her about odd smelling medication that made her sick. The court will not rely on this evidence. The motion to strike it is deemed moot.

### 2. Workers' Compensation as the Exclusive Remedy

Safeway contends that all of McMellon's claims should be dismissed because the remedies provided by the Oregon Workers' Compensation Act are McMellon's exclusive remedies. O.R.S. 656.018(1)(a) provides, in relevant part:

> The liability of every employer who satisfies the duty required by ORS 656.017(1) [to maintain workers' compensation insurance or qualify as a self-insured employer] is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment. . . .

■ An exception to O.R.S. 656.018(1)(a) exists where the injury to the worker is the result of the deliberate intention of the employer of the worker to produce such injury. O.R.S. 656.156(2). Thus, unless an employer deliberately intends to injure the worker, the remedies of the injured worker are limited to those provided by the workers' compensation statutes of the State of Oregon.

In *Lusk v. Monaco Motor Homes, Inc.*, 97 Or.App. 182, 775 P.2d 891 (1989), the Oregon Court of Appeals held that for an action on the part of an employer to be deliberate:

> the employer has had an opportunity to weigh the consequences and to make a conscious choice among possible courses of action, and also that the employer specifically intend "to produce * * * injury" to someone. . . . It is not enough for the employer to act with conscious indifference

to whether its actions will produce injury; it must *intend* to produce injury.

*Id.* at 188, 775 P.2d 891 (emphasis in original) (quoting O.R.S. 656.156(2)).

In *Palmer v. Bi–Mart Co.*, 92 Or.App. 470, 758 P.2d 888 (1988), an employee was sexually harassed by her supervisor over a six-month period. The court held that the employee's claim for the intentional infliction of emotional distress was not barred by the workers' compensation statute. The court first found that the facts were sufficient to support an inference that the employee's supervisor had the specific intent to harm her. It then concluded that the employer's failure to stop the conduct after being informed of it was sufficient to permit a jury to find that the supervisor's actions reflect the deliberate intent of the employer. *Id.* at 475–76, 758 P.2d 888.

■■ McMellon's claim here is similar to the claim in *Palmer*. Walker was angry with McMellon; he succeeded in temporarily reducing the number of hours that she worked; and he later threatened to "get her." Those facts are sufficient to support an inference that Walker specifically intended to harm McMellon. Some of this conduct occurred seven months after McMellon first complained to Gardner, the store manager. As in *Palmer*, these facts, if proven, are sufficient to permit a jury to find that the actions of Walker reflect the deliberate intent of Safeway. Accordingly, the workers' compensation statute does not bar McMellon from filing her claim for the intentional infliction of emotional distress.

■ The court also declines to grant summary judgment for Safeway on this ground against McMellon's claim for the reckless infliction of emotional distress, in which she alleges that Safeway engaged in the conduct in reckless disregard of the high probability of causing her emotional distress. "[A]n employer can have the specific intent to produce an injury that was not certain to result from its acts. . . ." *Lusk*, 97 Or.App. at 188 n. 4, 775 P.2d 891 (internal quotation omitted).

■ Safeway's argument must also fail against McMellon's wrongful discharge claim. The Oregon Supreme Court has held that the

legal injury alleged in an action for wrongful discharge is the discharge itself, not the type or severity of the damages suffered as a result of the discharge. *Moustachetti v. Oregon*, 319 Or. 319, 325, 877 P.2d 66 (1994) (statute granting immunity to state for injuries to people covered by workers' compensation does not provide immunity for wrongful discharge). The workers' compensation laws provide recovery for injuries during the course of employment. A discharge itself is not a compensable injury under workers' compensation laws. *Id.* Even though the two concepts may be based on the same set of underlying facts, they differ and are not exclusive of each other. Workers' compensation cannot be the exclusive remedy for wrongful discharge if it does not provide a remedy for wrongful discharge at all.

The court concludes that the workers' compensation statute of the State of Oregon does not bar any of McMellon's claims.

## 3. *Wrongful Discharge*

▪ A wrongful discharge may be a constructive discharge. To establish a constructive discharge, the employee must prove:

> (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

*McGanty v. Staudenraus*, 321 Or. 532, 557, 901 P.2d 841 (1995) (footnotes omitted) (emphasis in original).

▪ Safeway contends that McMellon was not constructively discharged. Safeway argues that there is no evidence that it intentionally created or maintained unacceptable working conditions. Safeway points out that McMellon did not speak to management until March of 1994, and that it removed Walker

from the pharmacy by July of 1994. However, McMellon testified that she spoke to Gardner in December of 1993. McMellon's Deposition, p. 68. Thus, seven months passed before Safeway took action which solved the problem. The passage of time is sufficient to raise a factual issue on this factor.

Safeway next contends that there is no evidence that it wanted McMellon to terminate her employment. There is evidence that Safeway made two formal offers to McMellon to return to her job after it had removed Walker from the pharmacy and resolved the outdated drug problem. These offers came from Safeway after McMellon had filed her workers' compensation stress claim. For a long period of time prior to that filing, McMellon worked under Walker's supervision, watched him dispense outdated drugs, was disciplined by him for doing so, and had her hours temporarily reduced.

▪ An employer is liable for constructive discharge if an employee resigns because of intolerable working conditions created by a supervisor with the intent to force the employee to quit, and the employer is responsible for the conditions under the doctrine of respondeat superior. *Mains v. II Morrow, Inc.*, 128 Or.App. 625, 629, 877 P.2d 88 (1994). The doctrine applies, that is, the employee is acting within the scope of employment, if (1) the act occurred substantially within the time and space limits of the employment; (2) the employee was at least partially motivated by a purpose to serve the employer; and (3) the act is of a kind which the employee was hired to perform. *Id.* at 631, 877 P.2d 88 (citing *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)). Unauthorized or forbidden acts can be within the scope of employment if the act could be expected when viewed in light of the employee's duties and if the employee committed the act in connection with the performance of work duties. *Id.* at 632, 877 P.2d 88.

Here, Walker was acting within the time and space limits of his employment. There is evidence in the record which would allow a jury to infer that he was at least partially motivated in his actions by reason of Safe-

way's financial performance. As the pharmacy manager, he was, in part, hired to handle outdated drugs. Thus, a jury could find that Walker acted within the scope of his employment, thereby making Safeway vicariously liable for the tort of constructive discharge, if Walker desired to cause McMellon to terminate her employment as a result of conditions under which she worked, or if he knew that she was certain, or substantially certain, to quit.

Safeway cites *Mains* as a case factually similar to the facts before this court. In *Mains*, the trial court granted summary judgment for the employer and against the employee's wrongful discharge claim because the employee did not explain her reason for rejecting the employer's repeated offers of reinstatement. The appellate court affirmed the ruling after concluding that the employee's reluctance to return to work was not based on conditions that would support an inference of a constructive discharge. *Id.* at 630, 877 P.2d 88. The facts testified to by McMellon are distinguishable from the facts in *Mains*. McMellon testified that Safeway's management did not support her concerns; that there was a seven-month delay before the problem she raised was resolved; and that she was laughed at by Gardner when she filed her workers' compensation claim. The court expresses no opinion as to whether Safeway's offers of reinstatement will reduce McMellon's claim for lost wages.

Safeway next contends that McMellon did not leave her employment as a result of the working conditions because she never intended to quit and has not done so. McMellon has stated in her deposition as follows: "I never quit." Exhibit A–1 to Affidavit of Lisa C. Brown, p. 19. She has also never returned to work, despite two invitations to return. McMellon has raised a factual issue on this point.

■ Safeway further contends that McMellon cannot pursue her claim for the tort of wrongful discharge because an adequate statutory remedy exists under O.R.S. 659.550. *Walsh v. Consolidated Freightways, Inc.,* 278 Or. 347, 352, 563 P.2d 1205 (1977).

O.R.S. 659.550 states, in part:

(1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

. . . .

(4) The remedies provided by this section are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section.

Safeway's argument must fail. McMellon did not call the Oregon Board of Pharmacy until June 20, 1994, approximately five days after the last day that she worked for Safeway. If the jury concludes that she was constructively discharged, and that this discharge occurred on her last day of work and not at some later point during her workers' compensation leave, Safeway could not have constructively discharged her for a report that she had not yet made.

### 4. *Intentional and Reckless Infliction of Emotional Distress*

■ The tort of the intentional infliction of emotional distress contains the following elements: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty,* 321 Or. at 543, 901 P.2d 841 (quoting *Sheets v. Knight,* 308 Or. 220, 236, 779 P.2d 1000 (1989)). Intent is defined to mean "where the actor desires to inflict severe emotional distress, and. also where he knows that such distress is certain, or substantially certain, to result from his conduct." *Id.* at 550, 901 P.2d 841 (emphasis

omitted).  The nature of the relationship between the parties affects the type of conduct that is considered actionable.  *Id.* at 548, 901 P.2d 841.  Here, Safeway, as the employer, has a greater obligation to refrain from subjecting its employee to abuse, fright or shock than it would in an encounter among strangers.  *See Hall v. The May Dep't Stores,* 292 Or. 131, 137, 637 P.2d 126 (1981).

■ Safeway contends that its acts are insufficient to rise to the level of socially intolerable conduct.  It further contends that Walker's conduct is not attributable to Safeway, and that its conduct is limited to its response to McMellon's complaints and possibly to its ratification of Walker's conduct.  The court has concluded above that there is at least a factual issue as to whether Walker was acting within the scope of his employment and, thus, whether Safeway is liable for his conduct.  *See Mains,* 128 Or.App. at 631, 877 P.2d 88 (intentional infliction of emotional distress).  For the purpose of this analysis, the court will assume that Walker's conduct is attributable to Safeway.  Therefore, McMellon was subjected to the following: (1) working in a pharmacy which was violating the laws concerning outdated drugs; (2) Walker's anger, "silent treatment," and threats when McMellon and others attempted to remove outdated drugs from the shelves; (3) a reduction in work hours for one week; and (4) a seven-month delay from McMellon's first report to management until Walker was removed from the pharmacy.

Safeway has not contended that McMellon, who is not a pharmacist, can be held liable for the reshelving of outdated drugs.  There is evidence that Walker threatened McMellon twice, and there is evidence of other displays of anger, but there is no evidence that Walker vented his anger on McMellon such as to constitute socially intolerable conduct.

■ "Conduct that is merely 'rude, boorish, tyrannical, churlish and mean' [is insufficient to be actionable, and] 'insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress.'"  *Watte v. Edgar Maeyens, Jr., M.D., P.C.,* 112 Or.App. 234, 239, 828 P.2d 479, 481, *rev. denied,* 314 Or.

176, 836 P.2d 1345 (1992) (quoting *Hall v. The May Dep't Stores, supra,* 292 Or. at 135, 637 P.2d 126).  In addition, those claims for the intentional infliction of emotional distress which courts in the State of Oregon have allowed to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment.  *See Lathrope–Olson v. Oregon Dep't of Transp.,* 128 Or. App. 405, 408, 876 P.2d 345 (1994) (calling a Native American woman a squaw, telling her that a squaw was supposed to walk behind her man, stating that all women were good for was between their legs, locking her out of the work van in the rain and snow, and threatening to push her into the path of oncoming vehicles); *Mains,* 128 Or.App. at 625, 877 P.2d 88 (daily physical assaults and sexual comments by supervisor); *Franklin v. Portland Community College,* 100 Or.App. 465, 787 P.2d 489 (1990) (supervisor called an African American male by the name "boy," issued false reprimands, shoved him, locked him in an office, and suggested that he apply elsewhere for employment).  The conduct of Walker and Safeway, if it is proven, should not be condoned, but it does not rise to the level of an extraordinary transgression of the bounds of socially tolerable conduct as typified by the cases cited above.  Summary judgment is granted against the claim of McMellon for the intentional infliction of emotional distress.

Assuming that the State of Oregon recognizes the tort of the reckless infliction of emotional distress, Safeway's conduct, if it is proven, is not sufficient to prove the element of socially intolerable conduct.  Summary judgment is granted in favor of Safeway against that claim.

### CONCLUSION

The motion of Safeway for summary judgment (# 23) is granted in part and denied in part as follows: the motion is granted as to the claims for the intentional and the reckless infliction of emotional distress, and the motion is denied as to the claim for wrongful discharge.  The motion of Safeway to strike (# 40) is denied.