Argued and submitted May 15, 1997, affirmed February 4, 1998

# FRED MEYER, INC.,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES
and Georgia Stack-Rascol,
*Respondents.*

## (27-95; CA A93803)

954 P2d 804

P. Conover Mickiewicz argued the cause for petitioner. With her on the brief was Roberts, Reinisch, Mackenzie, Healey & Wilson, P.C.

Erika L. Hadlock, Assistant Attorney General, argued the cause for respondent Bureau of Labor and Industries. With her on the brief were David Schuman, Deputy Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for respondent Georgia Stack-Rascol.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

### LANDAU, J.

Employer seeks review of a final order of the Bureau of Labor and Industries (BOLI) ordering employer to pay claimant damages for unlawful sexual harassment and further ordering employer to cease and desist further discrimination against any employee based on the employee's sex. Employer contends that BOLI erred in concluding that complainant was sexually harassed, that a number of BOLI's findings of fact are not supported by substantial evidence on the record as a whole and that BOLI erred in considering what employer contends is irrelevant evidence of harassment of other employees. We affirm, writing to address only employer's first assignment of error.

We take the following facts from the findings in BOLI's final order. Complainant was a female employee at one of employer's retail stores from October 1978 through March 1993. During 1993, she worked at the customer information desk and sometimes worked as a "person in charge" of that area, a nonmanagerial position with limited supervisory authority in the absence of a manager. Constance Clark was operations manager at the store during early 1993. She was the immediate supervisor of the customer information desk, including complainant and other persons in charge.

Most of the employees at the information desk were female, and there was a relaxed atmosphere among them, which included joking and banter, some sexual in nature. A male employee, David Haines, also worked at the customer information desk. He was described by those with whom he worked as "immature, outspoken, arrogant, mouthy, rude, crude, sarcastic, inexperienced and young, irritating, a jerk, in need of training, a goof off who needed pushing, and like a 16-year old kid." Haines began working at the desk in December 1992. Shortly after that, Haines commenced the conduct that ultimately gave rise to complainant's complaint. He made numerous remarks about the physical appearance of complainant and other women in the area. He "chattered constantly, blurting unthinking remarks, [such] as 'did you see those buns?' He made comments daily, 80% of which were sexual in nature * * *." He made reference to the size of various women's breasts and directed such comments at complainant "a couple of dozen times."

Complainant informed Clark about Haines's immaturity and his sexual comments. In response, Clark told complainant to have Haines read a posted statement on sexual harassment. When complainant did so, Haines laughed, and complainant told him to take the matter seriously. She reported his reaction to Clark.

Following that, "Haines began subjecting complainant to sexual comments, comments about her breasts, and brushing against her." He began referring to complainant as "Big Bertha," or "Bertha." She asked him to stop, but he did not. When he brushed up against her in the confined space of the customer information desk, he always referred to the contact in sexual terms, making a groan or saying "you love it." He touched complainant frequently, putting his arm around her or placing his hand on her shoulder. Claimant repeatedly told him to leave her alone.

On one occasion, when a customer returned a set of mixing bowls, Haines "held the smallest top first to his chest and 'pranced' around, then indicated that the largest bowl was 'for [complainant].'" Complainant asked Haines to stop, but he did not. On another occasion, when a customer returned a brassiere, Haines held it up to himself and said to complainant, "that wouldn't fit you, Big Bertha, would it?" On still another occasion, Haines touched complainant's breast, perhaps accidentally, and said "More than a handful is not a waste."

Complainant told Clark about "the bra incident, the mixing bowls, the references to 'Bertha,' the touching and the comments, 'perhaps not each time, but constantly.'" She asked Clark to talk to Haines. Clark did nothing.

Haines's comments and behavior continued during February and March. Complainant felt demeaned and embarrassed by his comments and his behavior. She became very upset and found it difficult to do her job, because she focused on his comments and not her work. On March 26, 1993, she went to Clark in tears to complain about Haines. Clark said, "I want both of you to stop it," and left the area. Later that same day, Haines answered the customer information telephone. Within complainant's hearing, he said "Bertha? Bertha, no, just a minute, here she is," and offered

complainant the phone. As Haines approached, apparently staring at complainant's breasts, she slapped him in the face and walked away. Employer ultimately fired complainant for striking Haines.

Complainant filed a complaint with BOLI, alleging sexual harassment and retaliatory discharge. After a hearing on both claims, BOLI prepared extensive findings of fact and conclusions of law, which ultimately determined that employer was liable for sexual harassment, but not for retaliatory discharge. As to the sexual harassment, BOLI found that Haines's comments and behavior created a pervasive environment that interfered with complainant's ability to work:

> "This was not a case of a single, isolated incident of offensive behavior on the part of Haines. The credible testimony suggests that his sexually offensive conduct had frequently been directed at complainant and at other females at [employer's] store in the presence of staff and customers * * *. [Clark] should have been alerted both by the pervasiveness of Haines' conduct and by complainant's protests that Haines was engaging in an ongoing course of sexually offensive behavior to which the employer was obligated to respond with immediate, appropriate corrective action."

On review, employer first contends that BOLI applied the incorrect legal standard in determining that there was sexual harassment. According to employer, there must be evidence of conduct that a reasonable person would find sufficiently pervasive and offensive to constitute a hostile work environment. Employer points to no particular place in BOLI's order where an incorrect standard was applied; it nevertheless concludes that BOLI apparently relied solely on complainant's subjective feelings of harassment as the basis for its decision. BOLI contends that, although it did not state expressly that any reasonable person would have found Haines's comments and behavior offensive, its findings, taken as a whole, adequately evince consideration of the proper, objective standard.

ORS 659.030(1)(b) provides:

> "(1)  [I]t is an unlawful employment practice:
>
> "* * * * *

"(b)   For an employer, because of an individual's * * * sex * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

■■   By administrative rule, BOLI has determined that sexual harassment is a form of gender discrimination:

"Harassment on the basis of sex is a violation of ORS 659.030. It is discrimination related to or because of an individual's gender. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when such conduct is directed toward an individual because of that individual's gender and:

"* * * * *

"(3)   Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

OAR 839-07-550.[1] Sexual harassment based on the creation of an "intimidating, hostile, or offensive working environment" often is referred to as "hostile environment" harassment. *Mains v. II Morrow, Inc.*, 128 Or App 625, 635, 877 P2d 88 (1994). It bears emphasis, however, that the rule is drafted in the disjunctive; evidence that conduct created an intimidating *or* a hostile *or* an offensive working environment suffices.[2] In determining whether conduct has created an "intimidating, hostile, or offensive working environment," we apply an objective standard, that is, we determine whether a reasonable person would arrive at that conclusion. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 142, 903 P2d 351 (1995). We review the question of whether

---

[1] The rule has since been amended in ways not relevant to this case.

[2] At oral argument, counsel for employer suggested that, because Haines was not complainant's supervisor, and because there was no evidence that he held any "power" over her or that his conduct instilled "fear" in her, there is insufficient hostility to establish liability under the rule. When pressed, counsel conceded that the rule is drafted in the disjunctive, but counsel nevertheless insisted that the element of hostility is "part of the mix" of elements that are required to establish liability. We reject as inconsistent with the language of the rule any suggestion that proof of supervisory hostility that instills fear in the subordinate employee is required to establish liability under the rule.

BOLI applied the correct legal standard as a matter of law. ORS 183.482(8)(a).

■     In this case, BOLI did not use the terms "objective" or "reasonable person." Nevertheless, when its order is viewed in its entirety, it is clear that it applied the appropriate standard. In light of its findings concerning the fact that Haines engaged in a pattern of frequent, ongoing, pervasive sexually harassing comments and behavior directed not only at complainant but also at other female employees, it is apparent that BOLI was not concerned solely with complainant's subjective reactions; if BOLI had applied a subjective standard, as employer suggests, it would not have made findings concerning the reactions of other employees to Haines's comments and behavior. Moreover, BOLI found that Haines's comments and behavior were such that employer reasonably should have been on notice of the offensiveness of the work environment. We reject employer's contention that BOLI applied an incorrect, subjective standard.

■     Employer next argues that, even under an objective standard, the evidence in this case is legally insufficient to establish the level of offensiveness necessary to establish liability under ORS 659.030 and OAR 839-07-550(3). Employer argues that, because there was a general atmosphere around the customer information desk of informality and sexual banter, Haines's conduct could not amount to sexual harassment, as a matter of law. According to employer,

> "the evidence was not that Haines was completely sexually inappropriate to complainant, but that one supposedly sexually inappropriate remark (Bertha) was made daily, and that three other sexually inappropriate remarks or gestures (two brassieres, one set of mixing bowls) occurred over the three month period. The agency made no attempt to distinguish between what conduct was irrelevant for purposes of evaluating whether *complainant* suffered a hostile work environment."

(Emphasis in original.) In support of its argument, employer relies on several federal decisions, applying analogous federal law, in particular, *Rabidue v. Osceola Refining Co.*, 805 F2d 611 (6th Cir 1986), *cert den* 481 US 1041 (1987). *See also Baskerville v. Culligan Intern.* Co., 50 F3d 428 (7th Cir 1995);

*Koelsch v. Beltone Electronics Corp.*, 46 F3d 705 (7th Cir 1995); *Ballou v. University of Kansas Medical Center*, 871 F Supp 1384 (D Kan 1994). Employer contends that, in those decisions, federal courts rejected sexual harassment claims on facts more offensive than what the record reflects in this case.

BOLI contends that employer ignores the agency's findings that Haines subjected complainant to repeated sexual innuendoes, commented about her breasts, brushed against her body and touched her frequently after having been asked repeatedly to leave her alone. BOLI further contends that the federal decisions are distinguishable.

Precisely what constitutes an "intimidating, hostile, or offensive working environment" has not been delineated by the appellate courts of this state. In *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 689 P2d 1292 (1984), the Oregon Supreme Court quoted—without comment—a decision of the Court of Appeals for the Eleventh Circuit:

> " 'For sexual harassment [to be actionable] it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances.' "

*Id*. at 89 (quoting *Henson v. City of Dundee*, 682 F2d 897, 904 (11th Cir 1982)). On at least one occasion, we have applied the same, general, "totality of the circumstances" test. *Mains*, 128 Or App at 635. We do likewise in this case. In doing so, we review the agency's application of the law to the facts as a matter of law. ORS 183.482(8)(a).

We agree with BOLI that employer ignores relevant findings as to Haines's repeated comments and behavior directed at complainant because of her sex. Those comments and behavior were not merely part of a general milieu of good-natured banter; they were, as BOLI found, directly targeted at complainant, were sexual in nature, were demeaning, offensive and unwanted and were accompanied by physical contact that was similarly demeaning, offensive and unwanted. Moreover, as BOLI found, Haines's comments

and conduct were continuous, over a relatively short period of time, and interfered with complainant's ability to carry on her duties at work.

As for the federal decisions on which employer relies, it certainly is true that federal decisions under Title VII generally are instructive. *Main*, 128 Or App at 634. Nevertheless, in light of the nature of the inquiry, governed as it is by the totality of the circumstances of each individual case, we find the relevance of those decisions to be limited. They generally involve a much more limited set of offensive behaviors over a much longer period of time. In *Baskerville*, for example, a male worker—who never touched the complainant—made nine comments of a sexual nature to her over a seven-month period. The court held that the limited number of incidents spread over such a long period of time was not actionable. *Baskerville*, 50 F3d at 430. Similarly, in *Koelsch*, male workers engaged in four incidents of sexual harassment over a two-year period. The court held that the four incidents, "while offensive," were too disconnected to constitute the creation of an intimidating, hostile or offensive work environment. *Koelsch*, 46 F3d at 708.

Moreover, the federal decisions are not entirely in agreement as to the proper standard that is to be applied in determining whether a work environment is hostile, offensive or intimidating. In *Rabidue*, for example, the Court of Appeals for the Sixth Circuit applied a standard that required the offensive conduct to be "so startling as to have affected seriously the psyches of the [complainant] or other female employees." 805 F2d at 622. Aside from the fact that the standard is not consistent with the more general test that has been applied by the Oregon appellate courts, we note that *Rabidue* has been rejected by the Ninth Circuit, *Ellison v. Brady*, 924 F2d 872, 877-78 (9th Cir 1991), and more recently has been questioned by the Sixth Circuit itself, *Yates v. Avco Corp.*, 819 F2d 630, 637 (6th Cir 1987).

In short, we conclude that BOLI's findings of fact are legally sufficient to support its conclusion that Haines's comments and behavior created an intimidating, hostile or offensive working environment within the meaning of OAR 839-07-550(3).

■ Finally, employer argues that, even if Haines's comments and behavior created an intimidating, hostile or offensive working environment, there is, as a matter of law, insufficient evidence that Clark or other managers knew of Haines's sexual harassment to permit liability to be imposed upon employer for his acts. BOLI once again contends that the evidence is abundant that Clark knew of Haines's sexual harassment and simply ignored it.

At the relevant time, OAR 839-07-555(2) provided:

"An employer is responsible for sexual harassment by an employee against a co-worker where the employer, its agents, or supervisory employees knew or should have known of the conduct, unless it can be shown that the employer took immediate and appropriate corrective action."

We review BOLI's application of that rule to the facts as a matter of law. ORS 183.482(8)(a). In this case, there is no dispute that Clark was a supervisory employee with respect to Haines. There likewise can be no question that Clark, according to BOLI's findings of fact, constantly and repeatedly was told of Haines's offensive comments and behavior with respect to complainant and that Clark repeatedly did nothing in response. We reject employer's contention that the facts are legally insufficient to establish its liability for Haines's sexual harassment.

Employer's other assignments do not require discussion.

Affirmed.