Argued and submitted January 27, reversed and remanded in part; otherwise affirmed October 4, 2000

## Mark Steven HARRIS,
*Appellant,*

*v.*

## PAMECO CORPORATION,
a Delaware corporation,
dba Pameco-Aire,
and Wally George,
*Respondents.*

### (9405-03305; CA A92496)

12 P3d 524

Ellen Rosenblum, Judge (Supplemental Judgment).

Adam Dean argued the cause for appellant. On the briefs were Des Connall, Shannon K. Connall, and Des & Shannon Connall, LLP.

Corbett Gordon argued the cause for respondent Pameco Corporation. With her on the brief were Richard R. Meneghello, and Corbett Gordon & Associates, P.C.

Robert Lane Carey argued the cause for respondent Wally George. With him on the brief was Barran Liebman, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals from a judgment entered after the trial court granted directed verdicts in defendants' favor at the close of plaintiff's case and at the close of all the evidence on certain claims in his amended complaint. ORCP 60. He assigns error to the trial court's dismissal of his claims for battery, intentional infliction of emotional distress, negligence and employment discrimination under ORS 659.030(1)(b). The directed verdicts were appropriate only if defendants were entitled to judgment as a matter of law. *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994). We reverse, in part.

In determining whether the trial court erred, we view the evidence in the light most favorable to plaintiff and extend to him the benefit of every reasonable inference that could be drawn from the evidence. *Foster v. Schnell Refrigeration Co.*, 280 Or 411, 414, 571 P2d 497 (1977). In that light, we state the facts. Plaintiff worked for defendant Pameco as a branch manager. Defendant Wally George supervised plaintiff as part of George's duties as regional manager for Pameco. Plaintiff and George interacted on a regular basis at plaintiff's workplace and at off-site Pameco meetings. George had an intimidating supervisory style. He often expressed anger by raising his voice, throwing his hands in the air and threatening employees with termination. At the same time, he would express greetings or goodbyes to his employees by saying "hugs and kisses" and would often touch the male employees by rubbing their necks or putting his arm around them.

At some point before the alleged conduct at issue in this case, plaintiff discussed with George his views on homosexuality. He testified that he made it clear to George that he believed "that the act of homosexuality * * * is not something that's conducive to good family values nor good morals within our society, and * * * that the act of * * * homosexuality deteriorates a society[.]" In January 1993, plaintiff and George attended a Pameco meeting in Las Vegas. One night after an awards ceremony, George threw his arm around plaintiff as they walked through the casino. Plaintiff testified that this

contact left him with mixed feelings. The next morning, plaintiff went to George's room at George's invitation. George answered the door in boxer shorts. Five to ten minutes into the conversation, George got into bed and pulled the sheets up over his stomach and asked plaintiff why plaintiff "didn't * * * just get in bed." Plaintiff testified that he left immediately, feeling confused. After arriving home, he spoke to family members about the incident.

In the following months, George touched plaintiff while at work on several other occasions. On one occasion, plaintiff described:

> "I was standing with a few managers outside the office and Mr. George put his arm—he came out of his office, put his arm around me, and we turned, and he said, I want to talk to you.

> "And he was up close to me and he was massaging my neck as we were walking toward the back door of the warehouse. And we got back to the back door of the warehouse, and I nudged him and I said, come on, Wally, and I kind of moved to a—you know, we were side by side and then I kind of moved to the side to talk to him face to face.

> "And as we were walking through the warehouse, I was close enough to him that when I turned to him and he turned to me talking to me, our faces were very close."

Plaintiff testified that he found the incident offensive because defendant "was holding me like I would hold my wife." Another contact occurred at plaintiff's desk when George sat down next to plaintiff so that their knees were, or were almost touching. Plaintiff testified and demonstrated to the jury how "[George] took his hand and he placed it on the inside of my left leg with his palm about on my—you know where that round thing is on your knee? His palm was right there and his fingers were up my thigh." Plaintiff moved his knee quickly away because he found the touch offensive, and he testified that the incident angered him. In mid-August 1993, plaintiff and George met to discuss the sales numbers for plaintiff's branch. George responded to plaintiff's report by telling plaintiff: "Well, if you do over $350,000, I'll give you a big wet kiss and tongue."

Plaintiff testified that he became depressed as a result of George's conduct.[1] He contacted some organizations that he thought could answer his questions about the incidents. Later, this exchange took place in February 1994 at another company meeting. Plaintiff testified:

"[A]s I passed by Mr. George * * * Mr. George said, 'How are you doing?' And I said, 'Fine, how are you doing?' And he said, 'Well, I have got a bad cold.['] And I said, 'Well, I better not get too close.' And he said to me, 'Does that mean I cannot invite you to my bed?' "

In May 1994, plaintiff filed this action related to the above conduct against George and Pameco after his employment had ended with Pameco. Plaintiff's amended complaint contains six claims for relief, some of which involve claims against Pameco and George individually and others which involve allegations as to both defendants. In his first claim, plaintiff alleges that George committed a battery by touching him on the shoulder, neck and thigh. In his second and third claims, plaintiff alleges that George intentionally inflicted emotional distress on him by subjecting him to sexual advances, comments and conduct. In his first, second and third claims, plaintiff also alleges that Pameco committed battery and intentionally inflicted emotional distress on him. The trial court directed verdicts on all of those claims at the close of plaintiff's case. In his fourth claim plaintiff alleges that he was wrongfully discharged under the common law because Pameco terminated him in retaliation for complaining about George's sexual harassment. The jury returned a verdict for Pameco on that claim, and plaintiff does not assign the jury's verdict as error on appeal. In his fifth claim, plaintiff alleges that Pameco was negligent in several particulars, including "in creating, encouraging and maintaining an intimidating and hostile work environment[.]" The trial court directed a verdict on all of the other allegations of negligence at the close of plaintiff's case and on that specific allegation at the close of all the evidence in favor of Pameco. Lastly, plaintiff's amended complaint alleges that Pameco

---

[1] On appeal, defendants do not controvert plaintiff's contention that he suffered severe emotional distress. There is sufficient evidence in the record for a jury to find that plaintiff suffered from depression following these incidents.

discriminated against plaintiff in violation of ORS 659.030(1)(b) and ORS 659.030(1)(f). The gravamen of those claims is that the company, knowing of George's sexual harassment, failed to take remedial steps and/or discharged plaintiff for complaining about George's conduct. At the close of plaintiff's case, the trial court granted Pameco's motion for a directed verdict on plaintiff's claim under ORS 659.030(1)(b). Likewise, at the close of all the evidence, the trial court granted Pameco's motion for a directed verdict on plaintiff's claim under ORS 659.030(1)(f). After trial, the court awarded costs to both defendants and attorney fees to Pameco.

On appeal, plaintiff makes nine separate assignments of error. Two of those assignments refer to the trial court's grant of directed verdicts on plaintiff's claims for battery and intentional infliction of emotional distress (IIED) against George. Two other assignments refer to the trial court's grant of directed verdicts on those same claims against Pameco. In addition, plaintiff assigns as error the dismissal of his negligence claim as well as the dismissal of his claim for discrimination under ORS 659.030. The remaining assignments of error relate to the trial court's awards of costs and attorney fees. Because of our disposition on the other assignments, those awards are vacated, and we do not reach the parties' arguments about them.

## I. THE BATTERY AND IIED CLAIMS

The trial court directed verdicts on the battery and IIED claims because

> "a reasonable jury made up of individuals would be unable to conclude that the acts as alleged and as testified to, without challenge at this point in the case, taken in the light most favorable to the plaintiff, do not amount to outrageous conduct in the extreme, do not exceed or are not an extraordinary transgression of the bounds of socially tolerable conduct, that no jury could find that."

A *"battery"* is a "voluntary act that is intended to cause the resulting harmful or offensive contact." *Walthers v. Gossett*, 148 Or App 548, 552, 941 P2d 575 (1997). "It is not necessary that the contact do actual physical harm—it is sufficient if the contact is offensive or insulting. Prosser, Law of

Torts 36, § 9 (4th ed 1971)." *Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976). George argues that "no reasonable jury could have concluded that [he] caused harmful or offensive contact or intended to cause such contact" by the manner in which he touched plaintiff. Specifically, he contends that plaintiff is hypersensitive to physical contact between males and that each instance of touching was nothing more than ordinary social contact. Also, George asserts that he "did not know, and could not have known, that plaintiff would be offended by these instances of non-threatening touching." We disagree that the jury would have been required to reach those findings on the basis of the evidence outlined above. It is also inferable from plaintiff's testimony that George's touching was sexual in nature in light of plaintiff's previously expressed views about homosexuality and his reactions when touched. It is also inferable that George knew that his conduct would be considered objectively offensive when considered in the context of his course of conduct. The trial court erred in taking plaintiff's claim for battery against George away from the jury.

■ To prove the elements of an IIED claim, plaintiff must prove (1) an intent by George to inflict severe emotional distress on plaintiff, (2) that George's acts caused plaintiff severe emotional distress and (3) that George's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995). George argues that "no reasonable jury could have concluded that [his] alleged conduct was sufficiently outrageous to be actionable or that [he] intended to inflict severe emotional distress on plaintiff." In response, plaintiff argues that he introduced evidence of a continuing course of unwelcome touching of intimate parts of his body and sexual and hostile comments by George to him that spanned over a year. He asserts that the outrageousness of the conduct is further supported by the fact that defendant George began directing his harassing conduct at plaintiff only after he found out that plaintiff believed that type of behavior and conduct to be offensive and to be contrary to plaintiff's religious and moral values. Those facts, according to plaintiff, would allow a jury to find that George intended to inflict emotional distress on him, or, alternatively, that

George was substantially certain that emotional distress would result from his conduct.

■     There is evidence from which a jury could properly infer that George intended to inflict severe emotional distress on plaintiff. A jury could find that George was aware of plaintiff's views on homosexuality and undertook to cause him to become emotionally distressed by subjecting him to unconsented to and unwanted physical touching. That is a reasonable inference in light of George's other comments to plaintiff and the fact that the conduct began after George became aware of plaintiff's views on homosexual behavior. Also, the multiple instances of contact and innuendos could demonstrate that George's conduct was not an isolated pattern of boorish behavior but a concerted effort to harass plaintiff. In that light, a jury could reasonably conclude that the first element of an IIED claim had been satisfied.

■     Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law. As we explained in *Whelan v. Albertson's, Inc.*, 129 Or App 501, 505-06, 879 P2d 888 (1994):

> "Our inquiry * * * begins with an analysis of those cases where statements have been held to be socially intolerable and those where statements were held to be merely rude. We have held that racial and ethnic slurs can be socially intolerable. *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994). Language used to sexually harass, such as 'all women were good for was between their legs,' has also been deemed socially intolerable. 128 Or App at 408. In contrast, unfounded, private accusations of lying and sabotage were characterized as rude and boorish, but not actionable. *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 828 P2d 479, *rev den*, 314 Or 176 (1992). Here, the insults directed at plaintiff were sexual in nature and resemble the socially intolerable sexual references in *Lathrope-Olson v. Dept. of Transportation, supra*.

> "If the content of statements alone is not dispositive, we also consider the context and repetition of the insults, in determining whether the statements were socially intolerable.

" 'The invitation to a woman to illicit intercourse, insufficient in itself [to be actionable], becomes extreme outrage when it is prolonged and repeated to the point of hounding, and accompanied by advertising in the form of indecent pictures or exposure.' Prosser, *Torts* § 11 at 48, 49 (3d ed 1964). Quoted in *Pakos v. Clark*, 253 Or 113, 126, 453 P2d 682 (1969)."

In addition, we may consider the existence of a special relationship, including an employer and employee relationship, between the parties in determining the bounds of socially tolerable conduct. *MacCrone v. Edwards Center, Inc.*, 160 Or App 91, 100, 980 P2d 1156 (1999). On this record, a jury could find that George's physical contact with plaintiff in conjunction with his statements to plaintiff constituted a course of sexual harassment and, therefore, socially intolerable conduct. We conclude that plaintiff presented sufficient evidence to establish the elements of IIED and that the trial court erred in dismissing his IIED claim against George.

█     Plaintiff proceeds on two alternative theories regarding his battery and intentional infliction of emotional distress claims against Pameco. First, plaintiff appears to argue that there is sufficient evidence for the jury to find that Pameco directed George's conduct. In *Walthers*, we explained that

"a corporation can be directly liable for intentional torts where: (1) the tort is committed by a person or persons wielding 'the whole executive power of the corporation'; and (2) the tortious acts were committed 'in behalf of the corporation.' " 148 Or App at 556 (citing to *Bingham v. Lipman*, 40 Or 363, 365, 67 P 98 (1901)).

Although plaintiff introduced some evidence of sexual innuendos in a company newsletter and managerial skit, there is no evidence that Pameco directed that George sexually harass plaintiff. Plaintiff's first theory fails for lack of proof.

█     In the alternative, plaintiff argues that evidence in the record would permit a jury to find that Pameco is vicariously liable for George's conduct. In order to withstand a motion for a directed verdict on the issue of vicarious liability, plaintiff must have presented sufficient evidence that

George's acts fell within the course and scope of his employment. *Chesterman v. Barmon*, 305 Or 439, 442-43, 753 P2d 404 (1988). The proper inquiries are:

"(1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." *Id.* at 442.

Under the Supreme Court's holding in *Fearing v. Bucher*, 328 Or 367, 977 P2d 1163 (1999), and *Lourim v. Swenson*, 328 Or 380, 977 P2d 1157 (1999), the focus is not on whether George acted in Pameco's interest or whether George was hired to sexually harass plaintiff. Rather, the focus is whether the acts complained of resulted from or were the outgrowth of the exercise of George's employment duties. A jury could find that George's conduct occurred while he was supervising plaintiff; thus, plaintiff's evidence suffices to meet these requirements. We conclude that the trial court erred in directing verdicts in favor of Pameco on plaintiff's battery and IIED claims on the theory of vicarious liability.

## II. THE NEGLIGENCE CLAIMS

Plaintiff's complaint alleges that:

"Defendant Pameco was negligent in one or more of the following particulars:

"(a) In creating, encouraging and maintaining an intimidating and hostile work environment;

"(b) In encouraging and allowing acts of sexual harassment upon employees;

"(c) In failing to adequately train defendant George in matters relating to sexual harassment;

"(d) In failing to adequately supervise, reprimand and discipline defendant George;

"(e) In failing to disseminate a written sexual harassment policy and educate Pameco employees regarding matters pertaining to sexual harassment;

"(f) In failing to enforce a sexual harassment policy; and

"(g)   In failing to properly investigate the various sexual harassment complaints about defendant George."

Pameco argued to the trial court that plaintiff's negligence claim was precluded under the Workers' Compensation Act's exclusivity provision. ORS 656.018(1)(a).[2] Plaintiff relies on the exception to the exclusivity provision found in ORS 656.018(3)(a) (1993) that provided:

"The exemption from liability given an employer under this section is also extended to the employer's insurer, the self-insured employer's claims administrator, the department, and the contracted agents, employees, officers and directors of the employer, the employer's insurer, the self-insured employer's claims administrator and the department, except that the exemption from liability shall not apply:

"(a)   Where the injury is proximately caused by willful and unprovoked aggression by the person otherwise exempt under this subsection[.]"

As the trial court indicated, plaintiff cannot use the statutory exception in ORS 656.018(3) for *"willful"* acts to support a *"negligence"* claim against Pameco. *See Virgil v. Walker*, 280 Or 607, 611-12, 572 P2d 314 (1977) (holding that the term willful in the statute means "deliberately and intentionally"). On appeal, plaintiff reasserts a similar argument, relying on our holding in *Palmer v. Bi-Mart Company*, 92 Or App 470, 758 P2d 888 (1988). However, that case is inapposite because it too involved deliberate and intentional conduct. The trial court did not err in directing a verdict on the negligence claims.

___

[2] ORS 656.018(1)(a) provides:

"The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter."

Although ORS chapter 656 has been amended after the events at issue in this case, none of the changes affects our analysis or conclusions.

## III.  THE STATUTORY CLAIMS

Finally, plaintiff assigns error to the trial court's grant of Pameco's motion for a directed verdict on plaintiff's claim under ORS 659.030 (1993). That statute provided, in relevant part:

"(1)  For the purposes of ORS 659.010 to 659.110, 659.227, 659.330, 659.340, 659.400 to 659.460 and 659.505 to 659.545, it is an unlawful employment practice:

"* * * * *

"(b)  For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older, or because of the race, religion, color, sex, national origin, marital status or age of any other person with whom the individual associates, or because of a juvenile record, that has been expunged pursuant to ORS 419A.260 and 419A.262, of any individual, to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"* * * * *

"(f)  For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden by this section, ORS 30.670, 30.685, 659.033 and 659.400 to 659.460, or because the person has filed a complaint, testified or assisted in any proceeding under ORS 659.010 to 659.110, 659.400 to 659.460 and 659.505 to 659.545 or has attempted to do so."[3]

The statutory claims were tried to the trial court. At the close of plaintiff's case, the trial court granted Pameco's motion for a directed verdict on plaintiff's claim under ORS 659.030(1)(b). At the close of all the evidence, the trial court granted Pameco's motion for a directed verdict on plaintiff's claim under ORS 659.030(1)(f). Apparently, the trial court ruled that George's conduct was not related to plaintiff's gender as a matter of law. The trial court explained:

---

[3] ORS 659.121(1) (1993) provided that "[a]ny person claiming to be aggrieved by an unlawful employment practice prohibited by * * * [ORS] 659.030 * * * may file a civil suit in circuit court[.]"

"I don't see any tie-in to any activity that I've heard [of] because of Mr. Harris' sex[.]

"* * * * *

"* * * I don't believe that—first of all, I don't believe that there was discrimination in this sense, but I further don't believe that there is discrimination because of Mr. Harris being a man or anything else. I mean, there just wasn't. There's no discrimination against Mr. Harris in terms of compensation that I can see. That claim comes up when you and I have the same experience, [defense counsel]. We apply for the job and I get promoted and you don't."

We are not persuaded by the trial court's analysis.[4] The grant of a directed verdict under ORCP 60 means that, as a matter of law, no reasonable factfinder could draw the inferences alleged by the plaintiff. As we have previously indicated, the record is susceptible to a reasonable inference that George undertook to sexually harass plaintiff.

On the issue of Pameco's liability for George's conduct under the statute, both parties recognize that because ORS 659.030 was modeled after Title VII of the federal Civil Rights Act of 1964, 42 USC § 2000E *et seq.*, federal cases interpreting Title VII are instructive. *See Mains v. II Morrow, Inc.*, 128 Or App 625, 634, 877 P2d 88 (1994). In *Mains*, the court considered when, under ORS 659.030, an employer could be liable for a supervisor's actions towards an employee:

"The federal courts acknowledge that sexual harassment may take different forms. Those courts generally follow two methodologies in analyzing such cases. In 'quid pro quo' cases, the employer is liable if it links employment benefits to the acceptance or rejection of sexual favors. The employer is strictly liable if the supervisor uses the employee's acceptance or rejection of sexual favors as a quid pro quo for job benefits. * * *.

"The second methodology permits recovery for a sexually 'hostile environment.' *Meritor Savings Bank v. Vinson*, 477 US 57, 67, 106 S Ct 2399, 91 L Ed 2d 49 (1986), says:

---

[1] Had the court ruled as a matter of fact that there was no sexual harassment of plaintiff after weighing the competing evidence on that issue, our standard of review would be different.

" 'For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment.' "

"* * * In applying this methodology, the Court has not adopted a precise standard for determining an employer's liability for a supervisor's conduct, but has applied only general agency principles. However, the lower federal courts have developed a somewhat clearer rule. In *Steele v. Offshore Shipbuilding, Inc.*, [867 F2d 1311, 1316, (11th Cir) *reh'g denied* 874 F2d 821 (1989)] the court held that when the plaintiff claims that a co-worker created a hostile environment through sexual harassment, the employer is liable if the employer 'knew or should have known of the harassment and failed to take prompt remedial action against the supervisor.' * * * The Oregon Supreme Court quoted this federal standard, without comment, in *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 89, 689 P2d 1292 (1984). We follow that standard here." 128 Or App at 634-35 (footnotes and some internal citations omitted); *see also Fred Meyer, Inc. v. BOLI*, 152 Or App 302, 309, 954 P2d 804 (1998) (applying a "totality of the circumstances" test to determine what constitutes an "intimidating, hostile or offensive working environment").

In this case, plaintiff argues that he presented sufficient evidence to support his claims under ORS 659.030(1)(b) that (1) George's sexual harassment of him was severe and pervasive enough to alter the conditions of his employment and create an abusive environment; and, (2) that Pameco knew or should have known of the specific conduct of which plaintiff complains. In response, Pameco argues that

"[it] is not liable for the actions of one of its supervisors because the Company took reasonable steps to prevent sexual harassment and plaintiff unreasonably failed to utilize remedial measures available to him. Even if Pameco could be liable for these actions, when viewed in the social context in which the alleged harassment took place, the actions could not be considered offensive to a reasonable person."

We hold that, should a factfinder believe plaintiff's version of the events, it could also find that George's conduct

created an intimidating, hostile and offensive working environment. The more difficult issue is whether there is evidence that Pameco knew of or should have known of the harassment and failed to take prompt remedial action against George. There is evidence that other branch managers and plaintiff's branch employees witnessed at least some of the conduct or comments. However, there is no evidence that anyone witnessed George's invitation to plaintiff in Las Vegas or the alleged placement of his hand on plaintiff's thigh. Until March 31, 1994, plaintiff did not complain about George's conduct to any of George's superiors at Pameco, although plaintiff could have contacted those individuals. On one occasion in December of 1993, plaintiff discussed with George's superior his opposition to a decision that George had made that affected plaintiff's branch without mentioning George's harassing conduct. Within days after receiving plaintiff's complaint about George's harassment of him, Pameco sent two of its human resources personnel to investigate plaintiff's complaint along with two complaints that plaintiff had forwarded from two other branch employees about George's conduct towards them. When Pameco's investigators arrived, plaintiff refused to talk to them without his attorney present. The Pameco representatives became angry with plaintiff's refusal to speak with them and terminated him on April 5, less than a week after receiving his complaint. The only evidence is that Pameco promptly investigated, once it became aware of plaintiff's complaint. It follows that, on this record, Pameco took the remedial action available to it during the time that plaintiff was employed. Accordingly, the trial court did not err in dismissing plaintiff's claim under ORS 659.030(1)(b). However, that conclusion does not foreclose the possibility that plaintiff made a sufficient record to survive a motion for a directed verdict on his claim for retaliatory discharge under ORS 659.030(1)(f).[5]

■ ORS 659.030(1)(f) (1993) made it an unlawful employment practice for "any employer * * * to discharge * * * any person because the person has opposed any practices forbidden by this section[.]" In order to withstand a

_____

[5] We do not decide what preclusive effect, if any, the jury's verdict on the common-law discharge claim has on plaintiff's statutory claim because the parties have not raised that issue.

motion for directed verdict, plaintiff must have introduced evidence that demonstrates that he was discharged by Pameco for opposing George's sexual harassment. Under the statute, it is not necessary that he prove liability under subsection (b); evidence that he opposed "practices" forbidden by the statute is sufficient.

Pameco does not argue on appeal that the trial court should have granted a directed verdict on the ground that the only evidence is that Pameco fired plaintiff because of his lack of cooperation with its investigation. Rather, Pameco argues that subsection (b) does not prohibit same gender harassment for sexual purposes. It follows, according to Pameco, that plaintiff's claim is not cognizable because he has failed to show discrimination because of his sex. Oregon appellate courts have not ruled on this issue so far as we can determine. However, the United States Supreme Court has considered that question under Title VII, and, as we stated before, Title VII law is instructive in interpreting ORS 659.030.

In *Oncale v. Sundowner Offshore Services, Inc.*, 523 US 75, 118 S Ct 998, 140 L Ed 2d 201 (1998), the male plaintiff had filed a complaint alleging that he was discriminated against in his employment by other male employees, including supervisors, because of his sex. The trial court granted the defendant company's summary judgment motion, holding that the plaintiff had no cause of action under Title VII for same gender sexual harassment. *Oncale*, 523 US at 77. Because the Court's opinion to the contrary directly addresses the issue present in this case, we set it forth at length:

> "If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination 'because of...sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.
>
> "Courts have had little trouble with that principle in cases like *Johnson [v. Transportation Agency, Santa Clara Cty.*, 480 US 616, 107 S Ct 1442, 94 L Ed 2d 615 (1987)], where an employee claims to have been passed over for a job or promotion. But when the issue arises in the context of a

'hostile environment' sexual harassment claim, the state and federal courts have taken a bewildering variety of stances. Some, like the Fifth Circuit in this case, have held that same-sex sexual harassment claims are never cognizable under Title VII. See also, *e.g.*, *Goluszek v. H.P. Smith*, 697 F. Supp. 1452 (ND Ill. 1988). Other decisions say that such claims are actionable only if the plaintiff can prove that the harasser is homosexual (and thus presumably motivated by sexual desire). Compare *McWilliams v. Fairfax County Board of Supervisors*, 72 F. 3d 1191 (CA4 1996)[, *cert den* 519 US 819 (1996)], with *Wrightson v. Pizza Hut of America*, 99 F. 3d 138 (CA4 1996). Still others suggest that workplace harassment that is sexual in content is always actionable, regardless of the harasser's sex, sexual orientation, or motivations. See *Doe v. Belleville*, 119 F. 3d 563 (CA7 1997)[, *cert granted and judgment vacated for further reconsideration in light of Orcale* 523 US 1001, 118 S Ct 1185, 140 L Ed 2d 313 (1998)].

"We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits 'discriminat[ion]...because of...sex' in the 'terms' or 'conditions' of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

"* * * We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' *Harris* [*v. Forklift Systems, Inc.*, 510 US 17, 25, 114 S Ct 367, 372, 126 L 2d 295 (1993)] (GINSBURG, J., concurring).

"Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically

involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *'discrimina[tion]*... because of... sex.'*" Id.* at 79-81.

The *Oncale* Court's plain-language analysis of Title VII (the same language found in ORS 659.030(1)(b)) informs our analysis of the issue in this case. There is nothing in the language of ORS 659.030(1)(b) that bars a claim of discrimination because the sexual harassment is aimed at a person of the same gender. Consistent with the language of the statute, plaintiff continues to have the burden of persuading the factfinder that he suffered discrimination because of his sex. However, that is a question of fact, not of law.

Additionally, Pameco argues that "[i]f this court determines that U.S. Supreme Court authority should be followed in the same-sex harassment regard, it should likewise apply the U.S. Supreme Court's test for vicarious liability adopted by the Oregon Bureau of Labor and Industries." As discussed above, the Oregon Supreme Court has established the test for vicarious liability in *Chesterman.* Pameco has not asserted that the language of ORS 659.030 or any other related statute requires, or permits, the application of a different test, nor has Pameco directed us to any such language. Consequently, we decline to apply any other standard in this context. In conclusion, we hold that the trial court erred in

directing a verdict on plaintiff's ORS 659.030(1)(f) claim on the grounds argued by Pameco.

Judgment for defendants on plaintiff's claims for battery, intentional infliction of emotional distress and discrimination under ORS 659.030(1)(f) reversed and remanded; otherwise affirmed.